**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

**BOBBY JOE GRIFFIN, Debtor**                                         **CASE NO. 18-00602-NPO**

                                                                                                    **Chapter 7**

**STEPHEN SMITH, as Chapter 7 Trustee for**
**The Bankruptcy Estate of Bobby Joe Griffin, Debtor**                         **PLAINTIFF**

**V.**                                                              **Adversary Proceeding _____ NPO**

**GLOBAL CLIENT SOLUTIONS, LLC, GLOBAL HOLDINGS, LLC,**
**THE LAW OFFICES OF ROBERT S. GITMEID & ASSOCIATES, PLLC,**
**ROBERT S. GITMEID, GERSHFELD LAW GROUP, P.C.,**
**YANA GERSHFELD and DEBT PAY GATEWAY, INC.**                         **DEFENDANTS**

## COMPLAINT

COMES NOW Plaintiff, Stephen Smith, Chapter 7 Trustee for the Bankruptcy Estate of Bobby Joe Griffin, (hereinafter the "Trustee") by and through his attorney and files this complaint, individually and collectively against Defendants, Global Client Solutions, LLC ("Global"); Global Holdings, LLC ("Global Holdings"), the Law Offices of Robert S. Gitmeid & Associates, PLLC, ("Robert S. Gitmeid & Associates"), Robert S. Gitmeid, individually, Gershfeld Law Group, P.C., ("Gershfeld Law"), Yana Gershfeld, individually, and Debt Pay Gateway, Inc., ("Debt Pay") and collectively hereinafter referred to as ("Defendants") and in support thereof would respectfully show unto the Court the following:

### JURISDICTION & VENUE

1.      Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334 of Title 28 of the United Stated Code in that this proceeding arises in and is related to the above-captioned Chapter 7 case under Title 11 and concerns property of the Debtor in that case.

2.      This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code and Section 157(b) of Title 28 of the United States Code.  This matter is primarily a core proceeding and therefore the Bankruptcy Court has jurisdiction to enter a final

1

order.

3.       Venue lies in this District pursuant to Section 1409(a) of Title 28 of the United States Code.

4.       This adversary proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.  The Trustee brings claims to enforce the Bankruptcy Code, for the recovery of money/property and accounting.

## PARTIES

5.       The Trustee or Plaintiff is the Chapter 7 Trustee for the above styled and numbered Chapter 7 proceeding and Estate.

6.       Global, is a limited liability company organized under the laws of Oklahoma and is wholly-owned by Global Holdings. Global does business in every state of the United States. Global offers and provides account maintenance and payment processing services to debt management service providers ("DMSPs") and consumers.  Global may be served upon its registered agent for service of process, Brent Hampton, at 4500 S. 129th Avenue, Suite 175, Tulsa, Oklahoma 74134.

7.       Global Holdings is a limited liability company organized under the laws of Oklahoma and— through its subsidiary, agent, or alter-ego, Global —does business in every state of the United States. Global Holdings as the parent company and is a controlling shareholder of Global. Global Holdings shares common officers, common office space, common ownership and/or common board of directors with Global.  Global and Global Holdings do not observe corporate formalities and their actions described herein are fraudulent and misrepresent themselves to consumers. Consumer expectations as to the party with whom they are dealing are frustrated. Global is thinly capitalized and is a separate corporate entity used to avoid liability to consumers who incur damages because of the actions described herein.  Global Holdings may be served upon its registered agent for service of process, Brent Hampton, at 4500 S. 129th Avenue, Suite 175, Tulsa, Oklahoma 74134.

2

8.      Robert S. Gitmeid & Associates is a professional service limited liability company organized under the laws of New York.  Robert S. Gitmeid & Associates claims to be a law firm providing legal services and debt management services to Mississippians.  Robert S. Gitmeid & Associates is one of several DMSPs that Global partners with to provide debt management services to Mississippians.  Robert S. Gitmeid & Associates' principal place of business is 2081 East 8th Street, Brooklyn, NY 11223.  Robert S. Gitmeid & Associates may be served upon its registered agent for service of process at 11 Broadway, Suite 1677, New York, NY 10004 or upon Robert S. Gitmeid at 2081 East 8th Street, Brooklyn, NY 11223.

9.      Robert S. Gitmeid is the managing attorney at Robert S. Gitmeid & Associates.  Robert S. Gitmeid has managerial responsibility for Robert S. Gitmeid & Associates and materially participates in the conduct of its affairs.  Robert S. Gitmeid may be served at 2081 East 8th Street, Brooklyn, NY 11223.

10.     Gershfeld Law is a professional corporation organized under the laws of California. Gershfeld Law claims to be a law firm providing legal services and debt management services to Mississippians. Gershfeld Law partners with Debt Pay to provide debt management services to Mississippians.  Gershfeld Law may be served upon its registered agent, Yana Gershfeld, at 20700 Ventura Blvd, Suite 330, Woodland Hills, CA  91364 or 15165 Ventura Blvd, Suite 200, Sherman Oaks, CA 91403. [1]

11.     Yana Gershfeld is the managing attorney at Gershfeld Law.  Yana Gershfeld has managerial responsibility for Gershfeld Law and materially participates in the conduct of its affairs.  Yana Gershfeld may be served at 20700 Ventura Blvd, Suite 330, Woodland Hills, CA  91364 or 56 Glennwood Avenue, Apt 6, Jersey City, NJ  07306. [2]

---

[1] www.gershfeldlawgroup.com

[2] http://members.calbar.ca.gov/fal/Member/Detail/251375 - pursuant to the California Bar Association website, Yana Gershfeld has not been eligible to practice law in California since 7/1/2014.

12.     Debt Pay is a professional corporation organized under the laws of California.  Debt Pay partners with Gershfeld Law to provide debt management services to Mississippians.  Debt Pay, like Global, offers and provides account maintenance and payment processing services to DMSPs and consumers.  Debt Pay may be served upon its registered agent, Christopher Queen, at 120 Birmingham Dr. Suite 245, Cardiff, CA 92007.

## FACTS

### *Facts specific to Bobby Joe Griffin*

13.     Bobby Joe Griffin ("Griffin") is 81 years old.  His primary source of income is social security.

14.     Prior to filing for bankruptcy, Griffin was struggling financially.

15.     Griffin incurred some debt and needed solutions.

16.     Upon information and belief, Griffin was contacted by telephone and offered assistance with his debts.

17.     The person on the telephone directed Griffin to a DMSP for help.

18.     Upon information and belief, Robert S. Gitmeid & Associates was the first DMSP that Griffin retained.

19.     Upon information and belief, Robert S. Gitmeid & Associates purported to provide legal services and debt management services to Griffin. *Ex A.*

20.     Upon information and belief, Griffin was required to use a special purpose account ("SPA") as part of the legal services and debt management program. The SPA was used to collect funds from Griffin, pay fees to the DMSP (i.e. Robert S. Gitmeid & Associates, Robert S. Gitmeid and Global) and pay creditors.

21.     This SPA is integral to the program offered by Robert S. Gitmeid & Associates and Robert S. Gitmeid. Upon information and belief, the SPA was created and maintained by Global.

22.     Robert S. Gitmeid & Associates and Robert S. Gitmeid offered Griffin only one provider for

the SPA. That provider was Global.

23. Griffin made payments of $874.67 per month to Defendants, Robert S. Gitmeid & Associates, Robert S. Gitmeid and Global. Griffin enrolled debts of $66,532.00 into the debt management program with Defendants, Robert S. Gitmeid & Associates, Robert S. Gitmeid and Global.

24. Griffin stopped paying his debts and stopped communicating with his creditors as directed by Robert S. Gitmeid & Associates and Robert S. Gitmeid.

25. Griffin made payments each month to Defendants, Robert S. Gitmeid & Associates, Robert S. Gitmeid and Global, and expected them to deliver the debt savings promised in the debt management program.

26. The precise amount paid to Defendants, Robert S. Gitmeid & Associates, Robert S. Gitmeid and Global, is uncertain. Further, the efforts made by these Defendants on behalf of Griffin are unknown.

27. In 2016, Defendants, Robert S. Gitmeid & Associates, Robert S. Gitmeid and Global, stopped providing debt management services to Griffin; however, another DMSP stepped into the take their place.

28. In 2017, Griffin's accounts were transferred to Defendants, Gershfeld Law, Yana Gershfeld and Debt Pay.

29. Gershfeld Law offered to provide legal services and debt management services to Griffin. *Ex B*

30. Griffin was required to use a SPA as part of the legal services and debt management program with Gershfeld Law. The SPA was used to collect funds from Griffin, pay fees to the DMSP (i.e. Gershfeld Law, Yana Gershfeld and Debt Pay) and pay creditors.

31. Gershfeld Law offered Griffin only one provider for the SPA. That provider was Debt Pay.

32. Griffin made payments of $874.67 per month to Defendants, Gershfeld Law, Yana Gershfeld and Debt Pay.

5

33.    The precise amount paid to Defendants, Gershfeld Law, Yana Gershfeld and Debt Pay, is uncertain. Further, the efforts made by these Defendants on behalf of Griffin are unknown.

34.    However, what is known about **all** the Defendants is that Griffin believed their debt management program was a viable solution to address his debts.

35.    Griffin trusted the Defendants to help him with his debts. The Defendants violated this trust.

36.    Upon information and belief, the Defendants received over $20,000.00 from an 81 year old man on social security.

37.    Despite Griffin's payments to the Defendants, they failed to perform the services promised.

38.    Griffin was forced into bankruptcy as a result of the Defendants.

39.    The Defendants intentionally made Griffin believe the debt management programs were a feasible solution to his problem.  The Defendants caused Griffin to lose valuable resources, such as the loss of the use of funds and time.  The amount of Griffin's debt increased during his "enrollment into the programs". The Defendants caused Griffin to suffer from stress, worry, embarrassment and emotional distress.

40.    As a result, Griffin filed for chapter 7 bankruptcy on February 21, 2018.

41.    Griffin listed $73,922.09 of unsecured debt.

### *Facts specific to the Defendants*

42.    Global and Debt Pay established and maintained a SPA for Griffin.  The SPA is essential to their debt management program.  The SPA secured payments from Griffin to fund the debt management program.

43.    Structurally, SPA's are sub-accounts managed by Global and Debt Pay, which reflect the beneficial interest of the Griffin in the debt management programs.

44.    Global and Debt Pay will claim they operate independently from the DMSPs, or as referred to in this case, "law firms".  However, Global and Debt Pay are partners with these "law firms" in a debt

management scheme. [3]  Global and Debt Pay exercised control over Griffin's funds and acted as an intermediary between Griffin and his creditors.

45.    Global has worked with over 800 DMSPs to provide debt management services to more than 236,000 consumers nationally. *Consumer Financial Protection Bureau v. Global Client Solutions, LLC et al, 2:14-cv-663 (C.D. of CA)* [4]  Upon information and belief, Debt Pay also operates nationwide.

46.    Global and Debt Pay have created and maintained SPA's for "law firms" like Moore Legal Center, P.C., Robert Gitmeid and Associates, PLLC, U.S. Legal Group, P.C., Legal Helpers Debt Resolution, LLC, and Consumer Capital Advocates, LLC., John Windsor, Legal Helpers Debt Resolution, LLC, Timberline Financial, LLC, Gershfeld Law, etc.

47.    In exchange for "services" under the debt management programs, Griffin made payments each month to Global and Debt Pay.

48.    The monthly payments made by Griffin covered three things: (i) the fee for the "law firms"; (ii) the fee for account-maintenance services by Global and Debt Pay and (iii) Griffin's savings, which are supposed to be set aside for future settlements of his debts, as negotiated by the "law firms".

49.    Global and Debt Pay financially benefit from the creation of the SPA as they charged Griffin fees and charges, beyond those already charged by the "law firms".  Those fees are:

> Account Setup (one-time tee) $9.00
> Monthly Service Charge $9.85
> Incoming Wire Transfer $10.00
> Outgoing Wire Transfer $15.00
> 2nd Day Delivery $10.00
> Overnight Delivery $20.00

---

3  Other known Mississippi consumers are:  Felicia Serpas (15-51547-KMS); Jean Tero; Jennifer Breland; Antoinette K. Francis-Whearry (16-51206-KMS); Peggy Blackmon, Justin Wayne Sharp (17-03188-ee)

4 Complaint ¶14

> Phone Payment $1.50
> Stop Payment Order $17.50

50.     The SPA's also benefit the "law firms" like Robert Gitmeid and Associates and Gershfeld Law.

51.     First, the SPA's secure monthly payments from consumers, like Griffin, for purposes of paying excessive upfront debt management fees.

52.     Second, the SPA's serve as an artifice for evading the Mississippi Debt Management Services Act governing debt management fees through the pretense that the DMSPs did not receive the consumers' debt management payments.

53.     Global and Debt Pay also attempt to avoid regulation by claiming they do not control the consumer's funds.  To do so, Global and Debt Pay insert convenient language into their contracts with consumers, like Griffin, but private contractual arrangements with consumers cannot alter the application of remedial statutory law. [5]

54.     At the most basic level, the Defendants' debt management program simply does not work.  The Defendants know the failure rate of is 80% to 90%. [6] However, despite their failure rate, the Defendants continue to market their services and promote the concept of debt management to vulnerable Mississippians as a viable debt resolution option.

55.     In addition, the predatory nature of the Defendants' fees are such that consumers' monthly payments are consumed by the costs of the debt management programs during the first several months of the program, and are substantially consumed by such fees throughout the remainder of their participation in

---

[5] See *Cortez v. Trans Union, LLC*, 617 F.3d 688, 708 (6th Cir. 2010) (Trans Unions private contractual arrangements cannot alter federal law).

[6] *Debt Settlement: Fraudulent, Abusive, and Deceptive Practices Pose Risk to Consumers, GAO-10-593T (April 22, 2012)*

the program.

56.     Faced with the glaring and pervasive predatory fee practices of the for profit debt management industry, many states, including Mississippi, adopted statutes prohibiting predatory fees and other abusive debt management practices. [7]

57.     The Defendants' predatory business scheme to financially enrich themselves and con already indebted Mississippians, like Griffin, violates Mississippi law as well as bankruptcy law.

58.     With full knowledge of their deceptive and abusive business practices, the Defendants continued to siphon money away from hard-working Mississippians by promising them debt relief that will never come.

## COUNT I.

## <u>TURNOVER OF ESTATE PROPERTY</u>

59.     The Trustee incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

60.     Section 541 of the Bankruptcy Code defines property of the estate as "all legal or equitable interest of the debtor in property as of the commencement of the case." 11U.S.C. § 541(a)(1).  Section 542 of the Bankruptcy Code gives Trustee the power to seek turnover of all property of Griffin's estate.

61.     Prior to filing his petition with the Bankruptcy Court, Griffin hired the Defendants to provide certain services related to his debts.

62.     Griffin believed he was paying fees and expenses to Defendants in exchange for certain debt management and legal services.  Griffin paid over $20,000.00 dollars into the debt management program.

63.     The Defendants have collected fees from Griffin but have not adequately provided the promised

---

7 Miss Code Ann. § 81-22-1 *et seq.*

services.

64.     Upon information and belief, the Defendants have engaged in a pattern and practice of violating 11 U.S.C. § 329 and their fiduciary duties.  Therefore, the Trustee respectfully requests that the Defendants be required to turn over pursuant to 11U.S.C. § 542(e): any and all records (whether stored in electronic or hard copy format) related to any and all aspects of the bankruptcy and debt management programs, including but not limited to, any and all records related to any and all individuals in Mississippi for whom the Defendants performed or agreed to perform any aspect of debt management programs.

## COUNT II.

### FRAUDULENT TRANSFERS

65.     The Trustee incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

66.     Within two years of the filing of his petition for bankruptcy, Griffin transferred substantial sums of his money to or for the benefit of Defendants (hereinafter "transfers").

67.     Griffin received less than a reasonable equivalent value in exchange for such transfers.

68.     Griffin paid over $20,000.00 dollars to the Defendants.  Griffin's debts were still outstanding at the time his bankruptcy was filed.

69.     Griffin was insolvent on the date of that such transfers were made, became insolvent as a result of such transfers, and/or had unreasonable small capital in relation to his business or their transaction at the time or as a result of the transfers.

70.     Trustee may avoid the fraudulent transfers under 11U.S.C. §§ 544 and 548.  Trustee may recover the transfers for the estate under 11U.S.C. § 550.

## COUNT III.

### ACCOUNTING

71.     The Trustee incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

72.     Section 542 of the Bankruptcy Code gives the Trustee the power to seek an accounting.

73.     Upon information and belief, the Defendants have engaged in a pattern and practice of violating 11 U.S.C. § 329 and their fiduciary duties.  The precise amount of money due from the Defendants to Griffin is unknown and cannot be ascertained without: (1) knowing the amount of money that they collected in fees for services that were not performed and/or not adequately performed; and (2) knowing the amount of money distributed from Griffin's SPA (3) acquiring any and all records (whether stored in electronic or hard copy format) relating to any and all aspects of the bankruptcy and debt management programs, including, but not limited to, any and all records relating to any and all individuals in Mississippi for whom Defendants performed or agreed to perform any aspect of debt management program.

## COUNT IV.

### 11 U.S.C. § 329

74.     The Trustee incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

75.     Prior to filing the chapter 7 bankruptcy petition, Griffin retained the Defendants to assist him with his debts.

76.     For these services, Griffin paid over $20,000 dollars to the Defendants.

77.     These payments exceed the reasonable value of the services provided to Griffin.

78.     These payments were made in contemplation of or in connection with bankruptcy.

11

79.     Pursuant to 11 U.S.C. § 329 and Bankruptcy Rule 2017, the Trustee requests the Court to order the Defendants to return all payments made by Griffin.

## COUNT V.

## BREACH OF FIDUCIARY DUTY

80.     The Trustee incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

81.     Robert S. Gitmeid & Associates, Robert Gitmeid, Gershfeld Law and Yana Gershfeld stood in a fiduciary relationship to Griffin based on the representations that he was receiving legal services.

82.     Robert S. Gitmeid & Associates, Robert Gitmeid, Gershfeld Law and Yana Gershfeld had a duty to act for the benefit of Griffin on all matters within the scope of their respective relationships.

83.     Robert S. Gitmeid & Associates, Robert Gitmeid, Gershfeld Law and Yana Gershfeld owed Griffin the utmost duty of good faith and fair dealing and a duty to put the interests of Griffin before their own interests.

84.      Robert S. Gitmeid & Associates, Robert Gitmeid, Gershfeld Law and Yana Gershfeld were under a duty to exercise a high standard of care in managing Griffin's financial affairs.

85.     Robert S. Gitmeid & Associates, Robert Gitmeid, Gershfeld Law and Yana Gershfeld assumed control and responsibility over Griffin's affairs within the context of their relationships.

86.     Robert S. Gitmeid & Associates, Robert Gitmeid, Gershfeld Law and Yana Gershfeld breached their duties to Griffin by failing to competently and diligently provide services to Griffin.

87.     Robert S. Gitmeid & Associates, Robert Gitmeid, Gershfeld Law and Yana Gershfeld breached their duties to Griffin by failing to supervise the services promised to Griffin.

88.     Robert S. Gitmeid & Associates, Robert Gitmeid, Gershfeld Law and Yana Gershfeld breached their duties to Griffin by charging unreasonable fees.

12

89.     Robert S. Gitmeid & Associates, Robert Gitmeid, Gershfeld Law and Yana Gershfeld breached their duties to Griffin by placing their own financial interests above the interests of Griffin.

90.     Robert S. Gitmeid & Associates, Robert Gitmeid, Gershfeld Law and Yana Gershfeld breached their duties to Griffin by sharing fees with non-lawyers.

91.     Robert S. Gitmeid & Associates, Robert Gitmeid, Gershfeld Law and Yana Gershfeld failed to conduct a feasibility analysis to determine whether Griffin was a good candidate for the Defendants' debt management program.

92.     Robert S. Gitmeid & Associates and Gershfeld Law are not licensed to practice law in Mississippi.

93.     Robert S. Gitmeid is not licensed to practice law in Mississippi.

94.     Yana Gershfeld is not licensed to practice law in Mississippi.

95.     Robert S. Gitmeid & Associates, Robert Gitmeid, Gershfeld Law and Yana Gershfeld breach of fiduciary duties proximately caused harm to Griffin.

## COUNT VI.

## VIOLATIONS OF THE MISSISSIPPI DEBT MANAGEMENT SERVICES ACT

96.     The Trustee incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

97.     The Mississippi Debt Management Services Act was designed to protect Mississippi consumers from unscrupulous debt management service providers like the Defendants.

98.     The Defendants are a "debt management service provider" as defined by Miss. Code Ann. §81-22-3 and are engaging in debt management services in the state of Mississippi.

99.     In exchange for a fee, the Defendants:

a) receive money from consumers for the purpose of distributing one or more payments to or

among one or more creditors of consumers in full or partial payment of the consumers' obligations;

b) arrange or assist consumers to arrange for the distribution of one or more payments to or among one or more creditors of consumers in full or partial payment of the consumers' obligations;

c) exercise control, directly or indirectly, or arranging for the exercise of control over funds of consumers for the purpose of distributing payments to or among one or more creditors of consumers;

d) act or offer to act as an intermediary between consumers and one or more creditors of consumers for the purpose of adjusting, compromising, negotiating, settling, discharging or otherwise deferring, reducing or altering the terms of payment of the consumers' obligations.

100.    The Defendants' acts against Mississippi consumers were unfair, unconscionable and deceptive and were violations of Miss. Code Ann. §81-22-23(1).

101.    Global and Debt Pay knowingly and substantially assisted the "law firms" by, among other things:

     a.    Offering to serve and serving as a custodian of Mississippians' debt management payments secured through illegal contracts;

     b.    Offering to serve and serving as custodian of Mississippians' payments for purposes of paying illegal fees;

     c.    Establishing, maintaining, and managing the SPA's as an artifice to evade state regulations governing the debt management industry, including Miss. Code Ann. §81-22-3(b);

     d.    Representing debt management services to Mississippians as a viable option;

     e.    Taking fees from Mississippians before actual services are performed;

     f.    Taking fees from Mississippians under the guise of providing legal services.

     g.    Misrepresenting the true relationship between Global, Debt Pay and the "law firms";

     h.    Misrepresenting the services to be provided to Mississippi consumers.

102.    The Defendants' fees are in excess of the amounts allowed by §81-22-13.

14

103.   The Defendants failed to comply with the disclosure requirements of Miss. Code Ann. §81-22-11 and failed to properly handle consumer funds under Miss. Code Ann. §81-22-9.

104.   The Defendants did not provide Griffin with a licensed attorney engaged in the practice of law in Mississippi to provide "debt management service" as defined by M.C.A. §81-22-3.

105.   Richard Boehm was not engaged in the practice of law in Mississippi.

106.   The Defendants did not register with Mississippi Department of Banking and Consumer Finance or secure a bond in violation of Miss Code Ann. § 81-22-5 and §81-22-7.

107.   The Defendants engaged in false advertising in violation of Miss Code Ann. § 81-22-21.

108.   Global violated the debt management statute of Washington state.  Global was found to have taken "possession and delivery of funds by accepting them into a custodial account". *Carlsen v. Global Client Solutions, LLC*, 256 P.3d 322 (Wash. 2011).

**WHEREFORE,** the Trustee having set forth his claims for relief against Defendants respectfully prays of the Court as follows:

A.   That this Court order Defendants to turn over: any and all records (whether stored in electronic or hard copy format) related to any and all aspects of Griffin's debt management program, as well as, any and all records related to any and all individuals in Mississippi for whom Defendants performed or agreed to perform any aspect of the debt management program.

B.   That this Court enter a judgment against Defendants avoiding the transfers of Griffin's assets to Defendants and granting such sums as may be assessed by the Court, including, but not limited to, the value of the transfers, attorney's fees, as well as any further relief as may be just and proper.

C.   That this Court order Defendants to account for the precise amount of money due from

15

Defendants to Griffin.

D.     That this Court order Defendants to pay actual damages, including economic and non-economic damages, as well as attorney fees in a sum to be determined by the Court.

E.     That this Court order Defendants to pay punitive damages in order to deter Defendants from committing these acts in the future.

F.     That this Court award pre and post judgment interest.

G.     That the Trustee have such other and further relief as the Court may deem just and proper, including equitable relief.

This the 1st day of May, 2018.

Respectfully submitted,

*/s/Jason Graeber.*
Jason Graeber Attorney for Trustee, Stephen Smith
2496 Pass Road
Biloxi, Mississippi 39531
Telephone:  (228) 207-7117
Facsimile:  (228) 207-8634
MSB No.:  101267
jason@jasongraeberlaw.com

16